IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| **LATOYA THATCH,** | ) | |
| | ) | |
| | ) | **CIVIL ACTION NO:** |
| Plaintiff, | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **PARISER DERMATOLOGY** | ) | |
| **SPECIALISTS, LTD.** | ) | |
| | ) | |
| Serve: Registered Agent | ) | |
| David M. Pariser, M.D. | ) | |
| 6160 Kempsville Cir. | ) | |
| Ste 200A | ) | |
| Norfolk, VA 23502-3945 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **CYNDI TOROSKY** | ) | |
| | ) | |
| Serve: 6160 Kempsville Cir. | ) | |
| Ste 200A | ) | |
| Norfolk, VA 23502-3945 | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Latoya Thatch ("Thatch" or "Plaintiff"), by counsel, brings this action against Defendants Pariser Dermatology Specialists, LTD ("Pariser") and Cyndi Torosky ("Dr. Torosky") for damages and alleges as follows:

## THE PARTIES

1. Plaintiff Thatch is a natural person, and at all times relevant hereto was, a citizen of the Commonwealth of Virginia, residing in the town of Portsmouth, Virginia.

2. Defendant Pariser is a Virginia corporation conducting business in the Commonwealth of Virginia.

3. Defendant Torosky is a Vice President and, upon information and belief, an employee of Pariser individually liable under 42 U.S.C. § 1981 as an aider and abettor of discrimination.

4. At all times relevant hereto, Defendant Pariser acted by and through its agents, servants and employees, each of whom, at all times relevant, acted within the scope of his or her job duties.

## JURISDICTION AND VENUE

5. This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5. Venue properly lies in this Court because the controversy involves Defendant's behavior at Plaintiff's place of employment, in the Eastern District of Virginia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Prior to instituting this suit, Thatch timely filed two administrative claims with the Norfolk Office of the Equal Employment Opportunity Commission (EEOC) on January 23, 2020 and February 3, 2020. A true and correct copy of the Charges of Discrimination are attached to this complaint and incorporated by reference as Exhibits "A" and "B".

7. The EEOC failed to resolve the claims and issued right-to-sue letters dated August 13, 2020 and September 8, 2020. True and correct copies of the right-to-sue letters are attached to this complaint and incorporated by reference as Exhibits "C" and "D". Plaintiff has filed her complaint within 90 days from the date he received his notices authorizing the right to bring this action.

## STATEMENT OF FACTS

8. Plaintiff Thatch is a black female.

9. Thatch began employment with Pariser on or about April 14, 2017 as a Dermatology Assistant. Based on merit, Thatch was later promoted to the position of Dermatology Assistant. Again, based on merit, Thatch was then promoted to the position of Dermatology Technician ("Technician").

10. Thatch remained a Technician with Pariser until she was fired on January 24, 2020.

11. A Technician's duties include rooming patients, performing punch and shave biopsies, suturing and removing sutures, assisting providers with procedures and other duties as required.

12. Thatch was assigned duties working at Pariser's Virginia Beach location. At this location she worked with all of the office's providers, including but not limited to Dr. Torosky.

13. Thatch was the only black employee at Pariser's Virginia Beach location.

14. Thatch is also only one of a few black employees employed at any of Pariser's six Hampton Roads' locations.

### *September 2019*

15. On or about September 11, 2019, Thatch emailed Pariser's Network Administrator, Jaren Boone ("Boone"), and inquired whether Boone could look into whether one of her coworker's, Franki Bryant ("Bryant"), had accessed Thatch's personal medical chart.

16. Thatch also spoke with Anissa Knight ("Knight") – a white female – Pariser's Clinic Operations Manager about her concerns that a coworker was accessing her personal medical information.

17. That same day, Andrew Heyson ("Heyson"), Pariser's Information Technology Support Specialist, confirmed that Bryant had, in fact, improperly accessed Thatch's personal medical

chart.  Heyson alerted Boone, along with Senior Human Resource Manager, Viki Rodriguez ("Rodriguez") that "Franki Bryant did appear in the work log viewing Latoya's chart . . . She appeared to view her face sheet on April 16, 2019."

18. Thatch also asked Heyson whether her personal medical information had been viewed by any Pariser employees on Sentara's system.  Unfortunately, Heyson was unable to perform such a search to address this inquiry.

19. On September 12, 2019, Heyson sent Thatch an email confirming that others had viewed her file.  Specifically, on August 19, 2019, Dr. Torosky had accessed Thatch's personal medical chart.

20. Pariser would later claim (after her firing) Thatch's inquiry and suspicion concerning her coworkers accessing her personal medical chart were unsubstantiated allegations.

21. Thatch felt this was additional support for her continual feeling that she was being isolated and treated differently than her white coworkers – especially by Dr. Torosky.

*November 2019*

22. On or about November 27, 2019, Thatch had a disagreement with another Dermatology Technician, Tabitha Sturkey ("Sturkey") – a white female.  Sturkey reported the matter to her clinical supervisor, Knight, and Rich McClelland ("McClelland") – a white male – Defendant's Operations Manager.

23. Thatch felt this was additional support for her continual feeling that she was being isolated and treated differently than her white coworkers.

24. Thatch specifically felt her coworkers were attempting to interfere in her personal life by attempting to access her personal health history.

25. Upon information and belief, neither Knight nor McClelland issued any contemporaneous disciplinary actions to either Sturkey or Thatch.

26. Upon information and belief, later, following Thatch's firing, Pariser requested Sturkey to draft an email to Rodriguez recollecting the events, <u>more than two months after the incident</u> – seemingly to support the decision to fire Thatch months later.

27. Defendant did not contemporaneously discipline Thatch (or express any concern) regarding the November 27, 2019 events or otherwise create any formal memorialization of these events that were shared with Thatch at any time during her employment.

## *January 21, 2020*

28. Prior to January 21, 2020, Thatch had developed concerns that she was being over scrutinized by Dr. Torosky. This included a belief that Dr. Torosky had asked certain patients (with whom the Dr. possibly had a personal relationship) to videotape Thatch's interactions with patients.

29. Dr. Torosky did not scrutinize any of Thatch's white coworkers with the same intensity.

30. On the morning of January 21, 2020, Thatch saw a patient ("Patient W") in Defendant's Virginia Beach office examination room for a biopsy procedure. Thatch noticed Patient W's fiancé holding her cell phone in a manner that appeared as if she was recording Thatch. Thatch told her it made her feel uncomfortable and asked her to stop recording her and the fiancé said "Fine" and put down her phone.

31. Patient W's visit concluded without any further issues.

32. Later that day Thatch approached Dr. Torosky and asked to speak privately in the doctor's office.

33. In Dr. Torosky's office (with the door closed), Thatch expressed concern that she did not feel comfortable working with Dr. Torosky. Specifically, Thatch expressed concern that Dr. Torosky was over scrutinizing Plaintiff's work and possibly having patients record Thatch with their cell phones. Thatch expressly told Dr. Torosky that she felt this was because of her race and that she would have to file a charge with the Equal Employment Opportunity Commission ("EEOC").

34. Dr. Torosky then asked medical scribe, James Fune ("Fune") to join the private conversation. Dr. Torosky asked Fune to confirm to Thatch that she had not asked any patient to record Thatch.

35. Fune would later affirm in writing that at this meeting he "was informed, for the first time, that the patient's wife was videotaping Ms. Thatch performing the biopsy procedure."

36. Fune would further affirm in writing: "I personally cannot confirm if the patient's wife was actually recording, or if the patient's wife stopped recording after [Thatch's] comment that it made her uncomfortable."

37. Thatch again expressly stated that she did not feel comfortable working with Dr. Torosky because of the perceived over scrutiny – and interference with her personal health information. Thatch again told Dr. Torosky, the EEOC will have to decide these matters.

38. Dr. Torosky would later affirm in writing that Thatch made multiple references to the EEOC during this meeting.

39. Dr. Torosky expressly told Thatch that she did not have any complaints about her work performance. Dr. Torosky further told Thatch that she had personally recommended her for the promotion to Dermatology Technician.

40. McClelland, arrived at Defendant's Virginia Beach office on the afternoon of January 21, 2020 at around 2:45 p.m.

41. McClelland first spoke with Dr. Torosky. He would later affirm in writing that Dr. Torosky told him during this meeting that Thatch intended to make an EEOC complaint.

42. McClelland then met with Thatch. A second member of management, Knight, was also present at this meeting. Thatch told McClelland that she felt she had been "unfairly targeted" by Dr. Torosky for a while. McClelland specifically asked Thatch if it was "a racist concern." She told McClelland that <u>she felt it was because of her race</u>. Thatch further told McClelland that she would not get into further details "without having her attorney present."

43. McClelland told Thatch that she was being placed on a leave of absence for the rest of the day. McClelland further told Thatch that Rodriguez would investigate the matter.

### *January 22, 2020*

44. On January 22, 2020, Rodriguez called Thatch to discuss her suspension. Thatch again informed Defendant that she felt she was being unfairly picked-on and overly scrutinized because of her race. She felt Defendant was purposefully making things difficult for her. She specifically referenced that she was the only technician (of 4 working in that office) that received such treatment. Rodriguez said she would get back to Thatch regarding her employment status.

45. That same day, Christina Holtzinger ("Holtzinger") – a white female – Pariser's Medical Records Manager / Customer Service Manager. Holtzinger called Patient W regarding his visit and interaction with Thatch. She asked him if her would like to provide any feedback about his visit. Patient W responded "No, no I don't have any."

46. Holtzinger then prodded Patient W asking if anyone had accused him or his fiancé of recording the visit. Patient W then told Holtzinger he "wasn't going to say anything."

47.     *After being prodded*, Patient W recalled that Thatch had asked Patient W's fiancé (also in the room at the time) if she was recording her.  Thatch then asked Patient W's fiancé to stop recording her, if she was.  The fiancé told Thatch, "Fine."

48.     Patient W ended his conversation with Holtzinger by laughing, saying "thank you" and wishing her "a good evening."

### January 23, 2020

49.     On January 23, 2020, Thatch filed an EEOC charge of discrimination (Charge No. 437-2020-00546, the "First Charge").

50.     In this First Charge, Thatch complained: (i) she was "the only African-American female working" in Defendant's Virginia Beach location; (ii) she was "constantly subjected to excessive scrutiny" – including being recorded by a patient; and (iii) she was retaliated against and suspended immediately after complaining about these matters to Defendant's Human Resources.

### January 24, 2020

51.     On January 24, 2020, Rodriguez called Thatch to inform her Defendant had decided to fire her, stating:

> I have concluded, um, the investigation and, as part of the investigation, um, I did speak with, um, the patient that you have the most recent incident with, um Mr. Walker.  And based on the information we got from the patient, and, um, all of the information I received from Dr. Torosky, and, um, from the meeting that Rich had with Dr. Torosky as well.  The decision is that, um, it is best that we terminate employment.

52.     Defendant's company policies call for progressive discipline of employees, starting with a written warning and eventually leading to potential termination.

53.     Thatch had not been formally disciplined by Pariser for any serious offense prior to her termination.  Thatch was unaware of any specific company policy on which Pariser was relying for its decision to suddenly fire Thatch.

54. Subsequently, Pariser would claim Thatch's conduct was serious abuse of a patient – Patient W's statement to Holtzinger seriously undercuts such allegations.

55. Thatch had not previously been disciplined by Defendant for any workplace misconduct. Nevertheless, Defendant fired Thatch immediately after she filed an EEOC charge.

56. On February 3, 2020, Thatch filed a second charge of discrimination with the EEOC (Charge No. 437-2020-00603, the "Second Charge"). In this Second Charge, Thatch expressly claims that she notified Defendant's management that she "was going to the EEOC" and she was immediately fired. The Second Charge expressly asserts a claim for retaliation.

**COUNT I**
**Retaliation in Violation of Title VII**
(42 USC 2000e *et seq.*)

57. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

58. Defendant adversely affected Plaintiff's employment assignments and opportunities as retaliation for Thatch's complaints to Dr. Torosky, McClelland, and Rodriguez.

59. Plaintiff's formal opposition to Defendant's racially favored acts and comments, in addition to Defendant's over scrutinizing of Plaintiff because of her race, constitutes protected activity.

60. Defendant's harassing conduct of Plaintiff was objectively severe and/or pervasive, looking at all the circumstances, including the frequency of the discriminatory conduct, its severity, its humiliating nature, and its adverse interference with Plaintiff's work performance.

61. Defendants' conduct has been intentional, deliberate, willful, wanton, malicious, reckless, and in conscious disregard of Plaintiff's rights.

62. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, emotional distress, reputational harm, embarrassment, humiliation and loss of enjoyment of life.

63. Plaintiff is entitled to recover her reasonable attorney fees, costs and expert witness expenses.

64. Due to the severity of Defendant's conduct, Plaintiff is also entitled to punitive damages.

## COUNT II
### Retaliation in Violation of Section 1981
(42 U.S.C. § 1981)

65. Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

66. Defendant adversely affected Plaintiff's employment assignments and opportunities as retaliation for Thatch's complaints to Dr. Torosky, McClelland, and Rodriguez.

67. Plaintiff's formal opposition to Defendant's racially favored acts and comments, in addition to Defendant's over scrutinizing of Plaintiff because of her race, constitutes protected activity.

68. Defendants' conduct has been intentional, deliberate, willful, wanton, malicious, reckless, and in conscious disregard of Plaintiff's rights.

69. Defendant's harassing conduct of Plaintiff was objectively severe and/or pervasive, looking at all the circumstances, including the frequency of the discriminatory conduct, its severity, its humiliating nature, and its adverse interference with Plaintiff's work performance.

70. As a direct and proximate result of the Defendant's conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, emotional distress, reputational harm, embarrassment, humiliation and loss of enjoyment of life.

71. Plaintiff is entitled to recover her reasonable attorney fees, costs and expert witness expenses.

72. Due to the severity of Defendant's conduct, Plaintiff is also entitled to punitive damages.

## JURY DEMAND

**Plaintiff demands a jury trial.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Latoya Thatch, prays for entry of judgment in favor of Plaintiff and against Defendants Pariser Dermatology Specialists LTD and Cyndi Torosky, in the form of the following relief:

a. Back Pay;

b. Front Pay;

c. Compensatory Damages;

d. Punitive Damages;

e. Attorneys' fees and court costs associated with this suit; and

f. Other such relief as may be appropriate to effectuate the purpose of justice.

Date: October 22, 2020                    Respectfully submitted,

                                          LATOYA THATCH

                                          _____/s/_____
                                          Todd M. Gaynor, Esquire
                                          Virginia Bar No.: 47742
                                          GAYNOR LAW CENTER, P.C.
                                          440 Monticello Avenue, Suite 1800
                                          Norfolk, Virginia 23510
                                          PH: (757) 828-3739
                                          FX: (75) 257-3674
                                          EM: tgaynor@gaynorlawcenter.com
                                          *Counsel for Plaintiff*